## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-16-683-F |
| 1. ATCH, LLC d/b/a G-MART, and<br>2. ALI ASGHAR KHAN, | ) ) ) ) |
| Defendants. | ) ) |

### COMPLAINT

For its Complaint, the United States of America alleges:

### JURISDICTION AND VENUE

1. This action arises under the False Claims Act and the common law and equitable theories of recoupment and unjust enrichment.

2. This Court has jurisdiction pursuant to the False Claims Act, 31 U.S.C. § 3732 and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in the Western District of Oklahoma under 28 U.S.C. §§ 1391(b) and 1395, and 31 U.S.C. § 3732. A substantial part of the transactions, events, or omissions giving rise to the United States' claims occurred in the Western District of Oklahoma, and also involve conduct proscribed by the False Claims Act.

### THE PARTIES

4. Plaintiff is the United States.

5. ATCH, LLC d/b/a G-Mart ("ATCH"), is an Oklahoma limited liability company that was formed in 2007. ATCH owned a convenience store which did business under the name G-Mart which was located in Guthrie, Oklahoma, at all times relevant to the conduct at issue in this Complaint.

6. Upon information and belief, Ali Asghar Khan ("Khan") is the owner of ATCH and was a resident of Guthrie, Oklahoma at all times relevant to the conduct at issue in this Complaint. Upon information and belief, he now resides in McKinney, Texas.

7. ATCH and Khan are hereafter referred to collectively as the Defendants.

## THE FALSE CLAIMS ACT

8. The False Claims Act provides that any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim is liable to the United States for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages the Government sustains. 31 U.S.C. § 3729(a)(1)(B).

9. "Knowing" and "knowingly" mean that a person, with respect to information, (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is necessary. 31 U.S.C. § 3729(b)(1).

## UNITED STATES DEPARTMENT OF AGRICULTURE
## FOOD AND NUTRITION SERVICE

10. The United States Department of Agriculture (USDA), Food and Nutrition Service (FNS), is the federal agency that funds and is responsible for administering the Supplemental Nutrition Assistance Program (SNAP), formerly known as the Food Stamp Program. The enabling legislation of this Program is the Food Stamp Action of 1977, Pub.L. 95-113, Title XIII, § 1301 et seq., 91 Stat. 958, codified as amended in Chapter 51, Title 7, United States Code. 7 U.S.C.A. § 2011-2039. Implementing regulations appear in Sub-chapter C of Chapter II of Sub-title B, Title 7, Code of Federal Regulations, 7 C.F.R. § 271-285 (1992).

11. SNAP was established to provide a more nutritious diet to low income families and individuals by making eligible food available to eligible individuals through approved retail food stores. Owners/operators of eligible retail stores may apply to the FNS for authorization to accept SNAP benefits from eligible recipients as payment for eligible food items. SNAP benefits cannot be exchanged for cash or ineligible items.

12. To become authorized to participate in SNAP, an applicant must complete a USDA Food Stamp Application for Stores. The application includes a certification that the applicant understands that trading cash for SNAP benefits or accepting SNAP benefits as payment for ineligible items violates the Supplemental Nutrition Assistance Program regulations.

13. Pursuant to the Food Stamp Act, supra, and the implementing regulations thereunder, SNAP benefits may be accepted by a retail food store only in exchange for eligible food items and not for ineligible items or for cash. 7 C.F.R. § 278.2(a).

14. Upon successful completion of the application process, qualified retail store owners/operators are authorized by the USDA to redeem SNAP benefits for eligible food items. Store owners/operators are provided a booklet and video containing food stamp program regulations and are instructed the regulations booklet must be reviewed prior to accepting SNAP benefits. The regulation booklet advises store owners/operators that they are prohibited from accepting and exchanging SNAP benefits for cash or ineligible items.

15. Under the Supplemental Nutrition Assistance Program regulations, "trafficking" in SNAP benefits means the "buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food . . ." 7 C.F.R. § 271.2.

16. The Oklahoma Department of Human Services (ODHS) determines who is eligible for SNAP benefits and administers the distribution and redemption of those benefits. In or about February 1998, ODHS converted to an electronic benefits transfer (EBT) system in Oklahoma County, Oklahoma as a means to more effectively deliver SNAP benefits to eligible recipients. Instead of paper food stamps, recipients are given electronic benefits transfer cards, known as Access Oklahoma cards.

17. The Access Oklahoma card operates as a debit card. After a qualified food purchase is made, the authorized retail grocer swipes the recipient's Access Oklahoma

card through a point-of-sale (POS) terminal. The recipient then must enter his/her personal identification number (PIN) into a keypad on the POS terminal to complete the transaction. Once the Access Oklahoma card has been swiped and a valid PIN entered and accepted, the recipient's benefit account is electronically debited and a corresponding credit is made into the store's authorized bank account. The funds are subsequently transferred to complete the transaction. In the event the magnetic strip on the Access Oklahoma card has been damaged, the card number can be manually entered on the POS terminal.

18. ODHS contracts with Affiliated Computer Services, Oklahoma City, Oklahoma (ACS) to handle the electronic delivery of SNAP benefits redeemed from the Access Oklahoma card. ACS maintains the hardware and software necessary to run the Access Oklahoma card system. ACS provides qualified retailers a POS device capable of reading the coded information on the Access Oklahoma cards. The POS device is provided after a Retailer Agreement is signed between the qualified store owner/operator and ACS.

19. Defendants were the owners/operators of G-Mart located at 823 West Noble, Guthrie, Oklahoma 73114.

20. On or about April 30, 2009, ATCH submitted to USDA an application entitled "Supplemental Nutrition Assistance Program Application for Stores" seeking authorization to participate in the SNAP program as a qualified retail store ("Application"). The Application is attached as Exhibit 1. On the Application, Khan is identified as a corporate officer of ATCH, and signed the Application as the owner.

## DEFENDANTS' FALSE STATEMENTS

21. After receiving information in approximately March 2013, that the owners/employees of G-Mart were unlawfully trafficking in SNAP benefits via the EBT system, ODHS Office of the Inspector General (OIG) and USDA OIG began an investigation.

22. During the investigation, record checks of the G-Mart revealed suspicious food stamp transactions indicative of SNAP benefit trafficking. These suspicious transactions included high dollar amounts (over $100) and multiple daily transactions by the same SNAP recipient.

23. Three SNAP recipients were interviewed and each admitted that they frequently traded their SNAP benefits with Defendants for cash at G-Mart.

24. SNAP recipient A.M. admitted that she received cash from the Defendants in exchange for her SNAP benefits during the following transactions:

| Date | Amount |
| --- | --- |
| 04/10/2012 | $125.32 |
| 07/20/2012 | 134.85 |
| 08/10/2012 | 127.00 |
| 09/10/2012 | 122.26 |
| 10/10/2012 | 111.09 |
| 12/11/2012 | 126.43 |

01/10/2013      124.31

25. SNAP recipient K.N. admitted that she received cash from the Defendants in exchange for her SNAP benefits during the following transactions:

| Date | Amount |
| --- | --- |
| 08/06/2012 | $119.99 |
| 08/07/2012 | 121.49 |
| 10/01/2012 | 123.23 |
| 11/01/2012 | 120.00 |

26. SNAP recipient E.R. admitted that she received cash from the Defendants in exchange for her SNAP benefits during the following transactions:

| Date | Amount |
| --- | --- |
| 01/19/2012 | $120.00 |
| 02/13/2012 | 121.18 |
| 06/11/2012 | 122.15 |
| 07/10/2012 | 119.99 |
| 07/11/2012 | 120.98 |
| 08/10/2012 | 120.75 |
| 08/13/2012 | 141.40 |
| 09/11/2012 | 122.91 |
| 09/12/2012 | 123.32 |

| | |
|---|---|
| 10/10/2012 | 125.93 |
| 10/11/2012 | 123.02 |
| 10/16/2012 | 121.09 |
| 11/14/2012 | 121.94 |
| 11/15/2012 | 122.00 |
| 12/10/2012 | 124.20 |
| 12/11/2012 | 121.40 |
| 01/17/2013 | 121.18 |

27. The transactions involving these three SNAP recipients are only examples of the trafficking in SNAP benefits engaged in by Defendants.

28. The United States has reviewed and analyzed Defendants' SNAP transactions and has compared those transactions to Defendants' nearest competitors. Based on this comparison, and on information and belief, from November 1, 2010 to December 31, 2014, Defendants engaged in at least 349 instances of trafficking in SNAP benefits in the amount of at least $37,459.83.

29. Each transaction of trafficking in SNAP benefits is a false claim and creates an obligation owed to the United States.

30. For purposes of getting payment or approval, Defendants knowingly presented and/or caused to be presented to the United States false or fraudulent claims for payment which misrepresented the transactions as being legitimate and for a properly payable

purchase of qualified food products when in fact the transactions involved exchanging SNAP benefits for cash or ineligible items.

31. Defendants knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for SNAP benefits. The false or fraudulent records or statements were the requests for payment of SNAP benefits which falsely or fraudulently represented that the SNAP beneficiary was purchasing eligible food items when they were in fact exchanging SNAP benefits for cash or ineligible items.

32. The false or fraudulent records or statements by the Defendants were material to the false or fraudulent claims in that they had a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. The United States would not have paid the false or fraudulent claims had it known the SNAP benefits were being trafficked by Defendants.

33. The United States paid Defendants' false or fraudulent claims, and as a result, upon information and belief, the United States has been damaged in the amount of $37,459.83.

34. Each SNAP transaction where cash or unauthorized items were obtained through submission of a claim for payment using the EBT system is a violation of the False Claims Act, 31 U.S.C. § 3729.

35. On January 2, 2015, Defendant Khan entered a plea of nolo contender to three misdemeanor counts of trafficking in SNAP benefits in the District Court of Logan

County, State of Oklahoma. As a result of this plea, he was ordered to pay $1,700.00 in restitution.

## COUNT I
## FALSE/FRAUDULENT CLAIMS

36. The United States incorporates the above allegations from paragraphs 1 through 35.

37. This is a claim for treble damages and monetary penalties for violations of 31 U.S.C. § 3729(a)(1)(A).

38. Defendants knowingly presented or caused to be presented false or fraudulent claims for payment to the United States as a result of illegal trafficking in SNAP benefits by Defendants.

39. By virtue of the false or fraudulent claims presented or caused to be presented by Defendants, the United States is entitled to three times the amount by which it was damaged, plus a civil penalty of not less than $5,500 and not more than $11,000 for each false claim Defendants presented or caused to be presented.

## COUNT II
## FALSE RECORDS/STATEMENTS

40. The United States incorporates the above allegations from paragraphs 1 through 39.

41. This is a claim for treble damages and monetary penalties for violations of 31 U.S.C. § 3729(a)(1)(B).

42. By reason of the foregoing, Defendants knowingly made, used, or caused to be made or used, false records or statements material to claims to the United States in which they trafficked in SNAP benefits.

43. The false records or statements made, used, or caused to be made or used, were material to the claims because they had a natural tendency and were capable of influencing the payment of SNAP benefits

44. The claims were paid and, as a result, the United States has incurred damages.

45. Pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(1), Defendants are liable to the United States for a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false or fraudulent claim, plus three (3) times the amount of damages sustained by the United States due to Defendants' actions.

### COUNT III
### COMMON LAW RECOUPMENT

46. The United States hereby incorporates by reference paragraphs 1 through 45 above into Count II.

47. This is a claim for common law recoupment for the recovery of funds received by Defendants from the trafficking of SNAP benefits which was contrary to federal statute or regulation.

48. Defendants received funds from trafficking in SNAP benefits to which they were not entitled, and are liable under the common law of recoupment to account for and return such amounts.

## COUNT IV
## UNJUST ENRICHMENT

49. The United States hereby incorporates by reference paragraphs 1 through 48 above into Count III.

50. Defendants were unjustly enriched by obtaining and retaining funds they received from trafficking in SNAP benefits to which they were not entitled.

51. Defendants' enrichment resulted in a loss of funds to the United States.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America demands and prays that judgment be entered in favor of the United States and against Defendants as follows:

A. On Count I (False/Fraudulent Claims), for treble the amount of damages sustained by the United States and for civil penalties of not less than $5,500 and not more than $11,000 for each false or fraudulent claim, plus post-judgment interest and costs, less any offset to which Defendants are entitled.

B. On Count II (False Records/Statements), for treble the amount of damages sustained by the United States and for civil penalties of not less than $5,500 and not more than $11,000 for each false or fraudulent claim, plus post-judgment interest and costs, less any offset to which Defendants are entitled.

C. On Count III (Common Law Recoupment), for the return of funds received by Defendants as a result of trafficking in SNAP benefits, plus post-judgment interest and costs, less any offset to which Defendants are entitled.

D. On Count IV (Unjust Enrichment), for the return of funds received by Defendants as a result of trafficking in SNAP benefits, plus post-judgment interest and costs, less any offset to which Defendants are entitled.

E. For such other relief as this Court deems just and equitable.

> Respectfully submitted,
> MARK A. YANCEY
> Acting United States Attorney
>
> *s/Ronald R. Gallegos*
> RONALD R GALLEGOS
> Bar Number: 013227 AZ
> MATTHEW P. ANDERSON
> Bar Number: OBA 30472
> Assistant United States Attorneys
> United States Attorney's Office
> 210 Park Avenue, Suite 400
> Oklahoma City, OK 73102
> Telephone:  (405) 553-8844
> Facsimile:   (405) 553-8885
> Ron.gallegos@usdoj.gov
> matthew.anderson2@usdoj.gov